**FREELAND et al. v. PELTIER et al.**
No. 9594.

Court of Civil Appeals of Texas. Galveston.
Oct. 29, 1931.

1907 planted and irrigated from said bayou approximately 600 acres of rice, and that they have, each and every year since said date, operated their said pumping plant and rice canal on said bayou and during each and every year have pumped and used from said bayou for rice irrigation purposes substantially all of the ordinary and normal fresh water supply from said stream, and that during each and every year thereof plaintiffs and their predecessors in title have had and held the continuous, uninterrupted, visible, adverse, exclusive and peaceable possession, use and control of all of the ordinary and normal and irrigable water supply of said Austin Bayou, pumping the said water from said stream into their said canal and irrigating and growing rice upon their said lands, by virtue of which plaintiffs have absolute title by limitation and by prescription to all of the normal and ordinary water supply and riparian waters in said Austin Bayou and also absolute title to all riparian rights in and to said bayou and the waters thereof at and near their said pumping plant.

"Plaintiffs further allege that on the 24th day of June, 1914, their sister, Sarah Jane Freeland, in behalf of herself and these plaintiffs as owners of said 1896-acre tract of land, filed with the county clerk of Brazoria County, Texas, a record of their appropriations of sufficient of the irrigable waters of Austin Bayou to irrigate portions of said 1896 acres of land for the growing of rice in accordance with and under the provisions of the law of this State in force at the time of such filing, and on the 26th day of June, 1914, filed a certified copy of such appropriations with the Board of Water Engineers of the State of Texas, in accordance with law, and that after said filings plaintiffs continued to operate their pumping plant and rice canal and to appropriate the ordinary and normal flow of the irrigable waters from Austin Bayou under and by virtue of their said appropriations each and every year from 1914 to the date of the filing of said petition, and, for more than three years, have had and held exclusive, continuous, adverse and peaceable possession, use and control of all of the normal and ordinary flow of irrigable waters in said bayou available for pumping at their plant, and that by virtue thereof plaintiffs have and hold absolute title to all of said water and riparian rights under and by virtue of three years limitation as provided by article 7592, Revised Statutes of the State of Texas.

"Plaintiffs allege that defendants own a tract of 822 acres of land situated on the opposite side of Austin Bayou to plaintiffs' land in the E. P. Myrick survey, Abstract 102, and that they are asserting some right, title and interest to the normal and ordinary flow of fresh and irrigable water in said bayou and to the riparian rights in said water in said

C. H. Chernosky, of Houston, and Rucks & Enlow, of Angleton, for appellants.

C. R. Wharton, of Houston, for appellees.

PLEASANTS, C. J.

This is a suit by appellants against appellees for injunction to restrain appellees from further pumping water from Austin bayou in Brazoria county for the irrigation of land of appellees on and riparian to said bayou.

The following full statement of the cause of action set out in plaintiffs' petition is copied from appellants' brief:

"That on or about the 23rd day of August, 1906, plaintiffs and the other members of their family purchased (and now own) approximately 1896 acres of land upon and riparian to said Austin Bayou, constructed a rice irrigation plant and canal thereon, together with other valuable improvements, and in the year

stream by virtue of their ownership of said land; that defendants have constructed and are operating a pumping plant and irrigation canal upon their said land at a point almost directly opposite plaintiffs' pumping plant on said bayou, and are pumping and again threatening to pump from said bayou a portion of the normal and ordinary fresh water and irrigable water from said bayou for the purpose of irrigating rice upon their land for the year 1930.

"Plaintiffs allege that Austin Bayou is a stream of limited fresh water supply; that said bayou is tributary to Bastrop Bayou which emptied into the waters of the Gulf of Mexico; that said bayou is a stream of limited water shed and is comparatively short, having its source near the north line of Brazoria County and extending in a general southeasterly direction to its confluence with Bastrop Bayou and the Gulf of Mexico; that said stream is about 60 feet in width and six or eight feet in depth at the point where plaintiffs' pumping plant is situated and that said stream contains permanent water for about one and one-half or two miles above plaintiffs' pumping plant; that said stream is not a permanently flowing stream, but only flows during and for a short period after heavy rain falls; that following heavy rains and freshets at its source, said stream contains fresh water which continues fresh until mingled with salt water entering from below and that practically all of the fresh water supply in the upper reaches of said stream is subject to being pumped and can be pumped from plaintiffs' pumping plant and made available for their use in irrigation through their canal; that said fresh water supply is very limited and upon pumping the fresh water from the upper reaches of said stream the salt water entering said stream encroaches from below; that said stream only contains fresh water sufficient to irrigate from three to four hundred acres of rice annually, as shown by the experience of plaintiffs' upon said stream for a long period of years, and that when attempt is made to pump water from said stream sufficient to irrigate more than three or four hundred acres per annum the salt water encroaches into the upper reaches of said stream before the pumping season and rice season is over and that said rice crops are cut short or entirely lost. And plaintiffs allege that if defendants are permitted to appropriate and pump water from said bayou sufficient to irrigate three or four hundred acres of land that they will deplete said bayou of fresh water and plaintiffs' crop of 1931 will thereby be destroyed."

The defendants answered by general demurrer, special exceptions to plaintiffs' pleas of limitation and prescription on the grounds that they are too indefinite and do not state the facts relied on to support the pleas with sufficient clearness, and that the facts stated do not sustain a plea of prescription or limitation against defendants' right to use the water of the stream to irrigate their riparian land.

They further answered by general denial, and by special plea in which they aver that as owners of land on and riparian to Austin bayou they had the right to take water from that stream to irrigate their said land.

The cause was tried with a jury in the court below, and in answer to the only issue submitted to them the jury found that the plaintiffs had not taken and appropriated all of the normal flow of water in Austin bayou available at plaintiffs' pumping plant for any ten consecutive years between the years 1907 and 1924, taking "claiming and using said water visibly, continuously, peaceably, adversely, and uninterruptedly as their own against all persons who might have rights to take waters from said stream available to said pump."

The court refused to submit the issue of limitation of three years.

Upon return of the verdict judgment was rendered thereon in favor of the defendants.

The first proposition presented in appellants' brief is as follows: "Where an appropriator of water shall have filed an appropriation in accordance with the laws of this State in force at the time of such filing and shall have filed with the Board of Water Engineers certified copy of such appropriations as required by chapter 171 of the Acts of the Regular Session of the 33rd Legislature, and shall have made use of the waters under the terms of such permit for a period of three years after the enactment of section 83, Chapter 88, of the Acts of the Regular Session of the 35th Legislature, which became effective June 20, 1917, he shall be deemed to have acquired a title to such appropriations by limitation as against any and all riparian owners upon said stream; and since the undisputed evidence in this case shows that the plaintiffs were appropriators of water from Austin Bayou, beginning in 1907, and that on the 24th day of June, 1914, they filed an appropriation in accordance with the laws of this State in force at such time, and on the 26th day of June, 1914, filed a certified copy of such appropriation with the Board of Water Engineers as required by law, and further, since there was ample testimony to sustain a finding of the jury that plaintiffs, under the terms of such filing and for a period of more than three years after said Act of 1917 went into effect, made use of substantially all of the ordinary and normal flow of irrigable water from said stream, available to their pumping plant, the court should have submitted to the jury said issue of plaintiffs' right and title to said water and riparian rights in said stream under said three years statute of limitation, plaintiffs having excepted to said charge for fail-

ure so to do, and having requested the submission of said issue by special charge."

It is not amiss to here note that no assignments of error were filed in the court below, and that the complaints made in the motion for new trial upon which the proposition is based are not identical with those presented by the proposition. The motion for new trial complains of the refusal of the trial court to submit the following special issue to the jury: "Do you find from the evidence that the plaintiffs have appropriated and taken from Austin Bayou during the period of irrigation for rice each year for the years 1915, 1916 and 1917, approximately all of the normal fresh water in Austin Bayou available to the pumping plant of plaintiffs and that plaintiffs have so taken and used said waters, claiming and using the same and making beneficial appropriation of same, visibly, peaceably, continuously, and adversely as their own against all persons who might have rights to take water from said stream available to said pump?"

And further complains of the failure of the court to sustain the following exception to the charge given the jury by the court:

"Come now the plaintiffs in the above numbered and entitled cause and except to the Court's charge submitted to them for examination prior to same being given to the jury, for the following good and sufficient reason, to-wit:

"That said charge nowhere submits to the jury plaintiffs' right and claim to the riparian waters sued for herein upon and under the three years' statute of limitation based upon plaintiffs' appropriation and filing upon said waters with the County Clerk and with the State Board of Engineers and their visible, adverse, peaceable and continuous possession and use and beneficial appropriation of all the waters in said stream for a period of three years immediately following the filing of said application and appropriation of the waters of said stream, and of this exception plaintiffs pray judgment of the Court."

It may be doubtful whether the proposition is sufficiently supported by the assignments of error made in the motion for new trial. The charge, the refusal of which is complained of in the motion, only submits the issue of three years' limitation arising from continued appropriation and use by defendants of all the normal flow of fresh water in the bayou for the years 1915, 1916, and 1917, while the proposition assumes that the refused charge submitted the issue of limitation of three consecutive years accruing after the taking effect in 1917 of the amendment to the statute mentioned in the proposition. However, the objection to the charge which the court failed to sustain does complain generally of the failure of the court to submit the issue of limitation pleaded by plaintiffs as arising under article 7592, Revised Statutes 1925.

■ While the question is not free from doubt, we conclude that the proposition is sufficiently germane to the error complained of in the motion for new trial to require our consideration.

There is evidence tending to show that one of the plaintiffs, acting for himself and the other plaintiffs, in 1916 filed an affidavit for appropriation of the waters of Austin bayou for the irrigation of 1,896 acres of land owned by plaintiffs and situated on said stream, in accordance with the provisions of the statute, in the office of the county clerk of Brazoria county, and a copy thereof with the board of water engineers, and for more than three consecutive years thereafter made use of the water under the terms of the affidavit for appropriation so filed.

The evidence further shows that the normal flow of fresh water in the bayou is not sufficient to irrigate all the lands of plaintiffs. The appropriation affidavit filed by plaintiffs recites that not all of their 1,896 acres was to be irrigated in any one year, and the evidence shows that they have never irrigated more than 600 acres in any year, and that the average number of acres irrigated yearly was much less than 600.

The yearly normal flow of fresh water in the bayou where it passes the pumping plant of the plaintiffs and defendants will not irrigate as much as 600 acres of land. Defendants at the time the suit was filed and at the time of the trial were pumping water from the stream for the irrigation of approximately 400 acres of their land. As shown by plaintiffs' petition, Austin bayou where it passes the lands of plaintiffs and defendants is a navigable stream under the statutes of this state.

■ We do not think appellants' proposition is sound for the reason that the statute under which the claim of right to all of the normal flow of fresh water in Austin bayou by reason of three years' use of the water under their appropriation affidavit does not give them such right as against the riparian rights of other land owners on the stream.

In the well-considered opinion of Chief Justice Cureton in the case of Motl v. Boyd, 116 Tex. 82, 286 S. W. 458, after an exhaustive résumé of our irrigation statutes and the decisions of our Supreme Court defining and fixing the rights of owners of riparian land on the navigable streams of this state, the court reaches the conclusion that it is obvious that the three-year limitation provision in article 7592 before cited "could not apply to waters granted to riparians by virtue of their grants, except, of course, so much of the waters as are not necessary for riparian uses." 116 Tex. 118, 286 S. W. 458, 472. On page 124 of 116 Tex., 286 S. W. 458, the learned court says: We conclude, therefore, that our appropriation statutes, including the act of 1917,

authorizing the appropriation of storm and flood waters above the highest line of ordinary normal flow of navigable streams are valid in so far as they authorize the appropriation without violation of riparian rights.

Since we have concluded that the rights of the riparians attach only to the ordinary flow of the stream, no appropriation was necessary in order to allow riparian owners to assert their rights.

The following statement copied from appellees' brief concisely and aptly expresses our conclusion upon the question presented by the proposition: "An appropriator can acquire title to *unappropriated* waters by following the statute, and by three years use. Riparian waters, that is, waters *'necessary to the use of a riparian owner'* (as stated in Motl v. Boyd) are not in any sense *unappropriated*. They were *appropriated* and became the property of the riparian owner along with and as a part of his grant. Ever afterwards he could no more be deprived of these 'necessary waters' than he could be deprived of the land itself. Neither his waters nor his land could be taken under the appropriation statutes."

The provision for the condemnation by appropriators under our irrigation statute of the riparian rights of landowners upon the stream is a recognition that such rights are not taken away by any provision of the statute save that of condemnation.

Appellants do not complain of the verdict of the jury upon the issue of limitation of ten years submitted by the court.

The second and only additional proposition presented in appellants' brief as a ground for reversal of the judgment complains of the ruling of the court striking out, on motion of defendants, some of the evidence introduced by plaintiffs on the issue of ten-year limitation. The evidence stricken out was objected to by defendants on the ground that it was hearsay and not the best evidence of the facts sought to be established thereby. After some of this evidence had gotten to the jury, the court sustained the objection made to the evidence by the defendants, and on motion of the defendants struck out or withdrew the objectionable evidence from the jury.

As shown by the bill of exceptions presented by appellants, the evidence withheld and withdrawn from the jury consisted of portions of the testimony of plaintiff C. A. Freeland and a memorandum used by him and exhibited before the jury while the testimony objected to was being given by the witness.

This witness, in answer to questions by plaintiffs' counsel as to the number of acres irrigated by plaintiffs with water pumped from Austin bayou each year from 1908 to 1927, replied that he could not give the figures from memory, but that he had made a memorandum showing the number of acres for each of the years mentioned. This memorandum was produced and used by the witness before the jury, and his testimony as to the amount of land irrigated each of those years was based on the figures shown in the memorandum. Before reading the figures in the memorandum showing the number of acres irrigated for each of the years, the witness stated that he and his brother had prepared the memorandum about a week before the time he was testifying, and that it was prepared partly from memory and partly from some old contracts which the witness had at home. The bill of exceptions shows the following as to appellees' grounds of objection to this evidence, and the ruling of the court complained of by the appellants:

"Q. Have you any independent recollection now of these different amounts opposite these dates? Without this to look at, can you remember how much you planted in 1912, say? A. No, sir, I couldn't. I couldn't give it year by year from my memory.

"Q. Well, how did you remember it better when you put it down a week ago than now? A. Well, we got some contracts that we could get some figures from.

"Q. Your memory is as good now as it was a week ago, isn't it? A. Certainly.

"Q. Then, the only difference is that you had some contracts that you had before you when you made this up, by which you aided your memory, supplemented your memory, by those contracts? A. Yes, sir.

"Q. And those contracts are at home. A. Yes, sir.

"Mr. Wharton: The witness says his memory is as good now as it was a week ago, and that this was made up by him and his brother, partly from memory and partly from some contracts. This witness ought not to be permitted to testify to the memory of his brother, or as to the contents of those contracts.

"Mr. Rucks: I am just offering it to refresh his memory; I am not offering it in evidence.

"Mr. Wharton: Now, wherever he is speaking from the contracts and not from memory, I ask that the contracts be produced.

"The Court: It is difficult to rule on that, because the Court can't tell in advance whether he is speaking from the contract or from memory. We will have to take that up as the questions are asked. The contracts would be the best evidence of what they contain, of course,

"Mr. Wharton: I don't want to be over technical about it, because I believe in the fair introduction of evidence, but they are undertaking to acquire our water rights here, and we want them to do it according to the strict letter of the law."

The witness then proceeded in answer to questions by plaintiffs' counsel to read from the memorandum the number of acres irri-

gated each year during the period mentioned. After this testimony had been adduced, the bill of exceptions shows that the defendants' objection to the evidence and motion to strike it out were renewed, and the court made the following ruling: "I think the instrument would be inadmissible and to allow the witness to read from it would also be inadmissible. I am going to sustain the objection and the jury are instructed not to consider same."

██ We think it clear that the court did not err in this ruling. The right of a witness to use a memorandum prepared by him to refresh his memory cannot be questioned but this right is limited to the purpose indicated, to refresh the memory, and unless the witness after referring to his memorandum can swear that his memory is so refreshed thereby that he then remembers the fact stated in the memorandum, his testimony and the memorandum are both inadmissible in evidence. In the case of Railway v. Birdwell (Tex. Civ. App.) 86 S. W. 1067, cited by appellants, the court says: "It is essential, however, that upon referring to it his [the witness'] recollection should be so refreshed that he can speak of the facts from memory."

██ As shown by the bill of exceptions, the excluded testimony does not meet this requisite of admissibility. In his great work on Evidence, Mr. Wigmore says that the rules as to admissibility of testimony of this character are necessarily crude and indefinite and much should be left to the discretion of the trial judge. The bill of exceptions shows that the trial judge in this case heard the testimony fully and the statements and arguments of counsel on the question of its admissibility, saw the witness testify wholly from the memorandum, and his inability to state any fact from memory after reading the memorandum. We cannot upon this state of the record say that the court abused its discretion in rejecting the offered testimony.

While the conclusion is not necessary in the disposition of this appeal, we deem it proper to say that in our opinion the evidence adduced by the plaintiffs, including that stricken out by the court, does not raise an issue of title or right in plaintiffs to all of the normal flow of water in Austin bayou under the statute of limitation of ten years.

It is true that in the Motl-Boyd Case, above cited, the Supreme Court held that but for the fact that the normal flow of the water of the stream involved in that case was taken and held by the plaintiff with the consent of the defendants, the evidence raised the issue of title to the water in controversy by limitation. The evidence in that case, however, showed actual, exclusive, adverse possession of the normal flow of the stream by plaintiff by impounding such waters in a lake created by the construction of a dam on the upper portion of the stream. This lake and dam were upon land owned or leased by the plaintiff, and his adverse, exclusive possession of the water in controversy was uninterrupted for more than ten years. The right claimed by the defendants in that case was to the waters so impounded and held by the plaintiff, for irrigation of their riparian lands. The Supreme Court denied the defendants any right to the waters in the lake other than that which flowed over the plaintiff's dam, but expressly based this holding upon estoppel of defendants to assert their riparian rights in the stream.

██ We think the holding in the cited case upon the facts just stated is no authority for the proposition that the mere use by pumping during the crop season of a large portion or all of the normal flow of a stream for any number of years could deprive a riparian land owner of his riparian right in the water in the stream. Such right, in our opinion, can only be taken by condemnation, or lost by estoppel, neither of which is pleaded nor shown by any evidence in this case.

It follows from what we have said that the judgment should be affirmed, and it has been so ordered.

Affirmed.